**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| **BRIAN BRANDT,** | ) | | |
| | ) | | |
| **Plaintiff** | ) | **Case No.** | |
| | ) | | |
| **v.** | ) | | |
| | ) | **JURY DEMAND** | |
| **AMAZON.com, Inc., a Washington** | ) | | |
| **corporation, KIRKLAND, a Tennessee** | ) | | |
| **corporation, and, BELLA** | ) | | |
| **HEALTHCARE, a California** | ) | | |
| **corporation,** | ) | | |
| | ) | | |
| **Defendants** | ) | | |

**COMPLAINT AT LAW**

NOW COMES the Plaintiff, BRIAN BRANDT ("Brandt"), by and through his attorney John M. O'Toole of O'Toole Law Firm, LLC, and complaining of the Defendants, AMAZON.com, Inc., ("Amazon"), KIRKLAND'S, INC. ("Kirkland's"), and, BELLA HEALTHCARE ("Bella"), sometimes collectively referred to as ("Defendants") brings this action and states the following:

**JURISDICTION AND VENUE**

1. The Court has diversity jurisdiction under 28 U.S. Code § 1332(a) insofar as Defendants Amazon is both a resident and citizen of Washington, Kirkland's is a resident and citizen of Tennessee, and, Bella is a resident and citizen of California.

1

2. Brandt is a resident and citizen of Illinois and thus of different citizenship than all of the Defendants.

3. The amount in controversy exceeds $75,000.

4. Venue, under 28 U.S.C. § 1391(a)(2), is proper insofar as a substantial part of the events or omissions giving rise to the claim occurred in Cook County, Illinois.

## PARTIES

5. Brandt is a citizen of the United States and resides in Chicago, Illinois.

6. Defendant Amazon is a Delaware incorporated entity who has its principal headquarters at 410 Terry Avenue North, Seattle, WA., 98109-5210 and has 111 offices located across the United States, as of July of 2022, and does business in all 50 states.

7. Defendant Kirkland's has its principal headquarters at 5310 Maryland Way, Brentwood, TN. 37027 and does business in all 50 states.

8. Defendant Bella has its principal headquarters at 2110 Pamplona Ct., Escondido, CA. 92025-6658 and does business in all 50 states.

## STATEMENT OF FACTS

9. That during and before May 3, 2022, the Defendants Amazon, Kirkland's, and, Bella were engaged in the business of manufacturing, distributing, and selling certain medicines and drugs, and did manufacture, distribute, and sell a certain product known as "Kirkland Signature Hair Regrowth Treatment Extra Strength for Men 5% Minoxidil Topical Solution, 12

Fl. Oz" a/k/a "Kirkland Minoxidi," and sometimes referred to as the "product." Kirkland manufactured the product whereafter Bella bought the product and then resold it via Amazon who was acting as the product's distributor.

10. That during and before May 3, 2022, the Defendants, Amazon, Kirkland's, and Bella supplied and delivered certain medications, drugs and products in the Chicagoland area. Kirkland did sell, supply, and deliver the product to Bella, who as previously stated, then resold the product via the Amazon internet platform.

11. That during and before May 3, 2022, Brandt, was under the care and treatment of a licensed physician, Ross A. Slotten, M.D., his general practitioner.

12. Brandt purchased the Kirkland Minoxidil 6-month package at the end of April of 2002, via the Amazon Internet site, and said items were delivered on or about May 3, 2022.

13. That during and after May 3, 2022, Brandt, used the product manufactured, sold, and/or distributed by Defendants Amazon, Kirkland's, and Bella.

14. Brandt followed the directions on the label as to the product's use. Specifically, Plaintiff applied one (1) milliliter to his hair after showering and drying his hair in the a.m., and, one (1) milliliter to his hair in the evening after dinner while wearing latex gloves. After each application, Plaintiff removed the gloves and washed his hands and face vigorously with warm and soapy water.

15. On Friday, May 13, 2022, Brandt woke up to find his right neck lymph node swollen and his head itched with a good deal of dandruff and blood on his pillow. Brandt then called his physician, Dr. Slotten, who advised him to cease use of the Kirkland Minoxidil and symptoms to watch for requiring emergency care if needed before he was able to see Brandt.

3

16. Dr. Slotten was able to see Plaintiff on May 17, 2022. Plaintiff made a point of not taking the product from May 13, 2022, as advised by Slotten. Plaintiff rinsed his hair with warm water only and took a shower but was unable to touch his scalp due to the pain it caused.

17. In addition to the swollen lymph nodes and head itching accompanied by copious amounts of dandruff, Brandt had a rash that started spreading to his arms, legs, back and feet. Brandt's ears were also burning, his face was swelling (especially around the eyes), and the pus and blood were oozing from all areas. In no event did Brandt scratch any of the areas, as it was contraindicated by Dr. Slotten in their phone conversation. The nodules and blisters cracked, bled, and oozed of their own accord, making it nearly impossible for Brandt to concentrate, sleep, or interact with anyone.

18. Dr. Slotten prescribed multiple medications, including pain relief, prednisone, and an anti-itching numbing compound (Lidocaine).

19. Brandt's rash was so prevalent that he was not able to go outside for several weeks, as Monkeypox was a concern and retail stores would not allow him to enter. There was a period of time when Brandt's face swelled up so much, he was unable to see.

20. Brandt physically continued to deteriorate with rash and other skin outbreaks all over his body. Brandt attempted to see a dermatologist but even with a STAT order (to be seen immediately) wasn't able to find one.

21. Brandt's rash seemed to stabilize in the middle of June of 2022. However, Brandt now was experiencing bouts of edema wherein his legs became swollen, and this caused him to fall on several occasions and experience full-body bruises. This exacerbated Brandt's prior spinal fusion surgery and increased what was otherwise non-painful. At this time, Brandt needed to

4

travel to the hospital to see if his knees or legs had been impacted, given that he had a drop foot and a fractured knee from the previous year.

22.  On or about June 20, 2022, Brandt's rash seemed to be in remission. However, this only lasted a few days wherein it (the rash) started spreading again on his neck under his chin. As a reminder, Brandt discontinued the use of the product on May 12, 2022.

23.  Late in the evening on July 3, 2022, Brand's pain got so bad that he had to go to the hospital as he woke up from the pain and started screaming. He was treated first with multiple injections and morphine. Brandt's neck was a thick gooey green mass, and he was admitted to the St. Joseph Medical Center ("SJMC") for four (4) days.

24.  While at SJMC, Brandt was subject to multiple treatments - including debridement of the site multiple times – and endured excruciating pain. Brandt was also under strong consideration for transfer to Loyola University Medical Center's burn unit.

25.  It took several weeks for the wound (his entire front neck from directly under the chin to the sternum on the Y axis and from lymph node to lymph node on the X axis) to close requiring constant monitoring from dermatologists and Dr. Slotten. In addition, Brandt could not go outside because of risk of infection and continued concern from the general public regarding the condition (the space was notoriously difficult to cover except in a hospital setting.)

26.  Throughout the entire ordeal experienced by Brandt and described above, he (Brandt) bled from his head, arms, neck, and face. Consequently, Brand had to replace (multiple times) his mattress, bedding, multiple shirts, pillows, carpets, bath items, damaged the sink (lack of sight), and towels on numerous occasions.

27.  As a result of using the Kirkland product, the Plaintiff incurred the following personal injuries:

a.  Fiery pain throughout his body;
b.  Loss of appetite;
c.  Hair loss;
d.  Nausea;
e.  Bleeding/oozing around his head, arms, neck and face;
f.  Incredible itching;
f.  Loss of sight (for 3 day) caused by swelling of the face;
g.  Burned skin (ears, scalp, arms, neck, legs and feet);
h.  Scabbing;
i.  Blistering;
j.  Increased back pain due to the edema and loss of balance caused by the product
j.  Insomnia;
k.  Scaring and discoloration of patches of the face; and,
l.  Loss of ability to go outside for 8 weeks

## COUNT I
### (Negligence)

28.  Plaintiff restates and realleges paragraphs 1-27 as contained in paragraph 28. This was communicated in part to Amazon early in this process (with pictures), who did nothing to stop the sale of the product. This was also communicated to Bella, who is believed to have changed their name but continued to sell the product.

29.  That as a direct and proximate result of one or more of the aforesaid careless and negligent acts of the Defendants, Brandt, was then and there injured and suffered ongoing injuries, including scaring to the scalp, throat, and face, and permanent damage to the aforementioned areas, including treatment to the spinal cord to alleviate pain, increased from the falls due to the edema.

WHEREFORE, Brandt, asks for judgment against the Defendants, Amazon, Kirkland's, and Bella in excess of $250,000.00. The damages incurred by Plaintiff, include, but are not limited to the following:

A.  Inability to interview for job positions;

B.  Medical bills and expenses resulting from use of this product;

C.  Ruination of certain household items, namely: (1) clothing; (2) mattress; (3) bedding (4) bathroom furniture (5) housewares, as well as other items;

D.  Personal injuries including falling, scarring by the Kirkland product, and, permanent damage to the scalp, throat, eyes, skin of the face, and back.

E.  Pain and suffering from May of 2022 to the present.

F.  For such other relief that the Court considers proper and just.

## COUNT II
### (Strict Liability)

30.  Brandt, hereby adopts, reasserts, and realleges the allegations contained in Paragraphs 1-27 of his Complaint as Paragraph 30 of this Count.

31.  That during and before May 3, 2022, the product Kirkland Minoxidil, as manufactured, distributed and sold, was in an unreasonably dangerous condition in that it could not be applied without severe adverse side effects, and specifically that the Defendants, Amazon, Kirkland's, and Bella:

a.  failed to warn of the side effects of Kirkland Minoxidil on various parts of the body, well beyond any area that was our could have the product directly applied, including but not limited to hands, arms, legs, feet, neck and scalp and,

b.  failed to specify any remedies for such effects caused by Kirkland Minoxidil, even when Amazon was directly informed and apparently

contacted the seller. The product remains for sale, and its posting was moved from the old seller's name to the new seller name.

32.    That one or more of these defects existed when Kirkland Minoxidil left Defendants control, making Kirkland Minoxidil unreasonably dangerous because it failed to perform in the manner reasonably expected in light of the product's nature and intended function and/or because the dangers outweighed the utility of the product. There were multiple confirming reports of adverse customer experiences on the Defendants' websites, however, most disappeared before they could be captured and preserved.

33.    That as a direct and proximate result of the aforesaid unreasonably dangerous condition of the product Kirkland Minoxidil, Brandt was injured and sustained ongoing injuries, scaring and permanent damage.

WHEREFORE, the Plaintiff, Brandt, asks for judgment against the Defendants, Amazon Kirkland's, and, Bella in excess of $250,000. The damages incurred by Plaintiff, include, but are not limited to the following:

A.    Inability to interview for job positions; (i.e. final interviews for Partner role with Capgemini Invent were scheduled for the week of Jan 4th. This was a $500k+ job I was unable to continue to interview for.

B.    Medical bills and expenses resulting from the use of this product also include falling, and, medical devices required to stabilize and promote movement, now and in the future;

C.    Ruination of certain household items, namely: (1) clothing; (2) mattress; (3) bedding as well as other items;

D. Personal injuries include scarring by the Kirkland Minoxidil product and permanent damage to the scalp, throat, eyes, skin of the face, and back.

E. Pain and suffering from May of 2022 to the present, including insomnia, unending pain ranging from burning requiring opiates to unquenchable pain requiring multiple doses of morphine and opiates for what was considered beyond 3rd degree burns by the hospital staff, and the constant and consistent anxiety this created, exasperating Brandt's existing anxiety disorder to the point of near panic and perpetual fear.

F. For such other relief that the Court deems proper. The multiple pictures, later to be provided, depict some of the most severe product-inflicted outcomes many of the medical practitioners had ever seen - using their own words.

## COUNT III
### (Implied Warranties Under the Uniform Commercial Code)

34. Brandt, hereby adopts, reasserts, and realleges the allegations contained in Paragraphs 1-27 of his Complaint as and for the allegation in Paragraph 34 of this Count.

35. That during and before May 3, 2022, the Defendants, Amazon, Kirkland's, and Bella did impliedly warrant that the product KIRKLAND MINOXIDIL was of merchantable quality pursuant to the applicable provisions of the Uniform Commercial Code.

36. That at the aforesaid time, the Defendants, Amazon, Kirkland's, and Rush did breach the aforesaid implied warranty in that the product was not of merchantable quality.

37.   That as a direct and proximate result of the aforesaid breach of implied warranty, the Plaintiff, Brandt, suffered and continues to suffer personal and on-going injuries including scarring and sustained damages.

WHEREFORE, Brandt, asks for judgment against the Defendants, Amazon, Kirkland's, and Bella in excess of $250,000. The damages incurred by Plaintiff, include, but are not limited to the following:

A.   Inability to interview for job positions;

B.   Medical bills and expenses resulting from use of this product to also include falling;

C.   Ruination of certain household items, namely: (1) clothing; (2) mattress; (3) bedding as well as other items;

D.   Personal injuries to include scarring by the Kirkland Minoxidil and permanent damage to the scalp, throat, eyes, skin of the face, and back.

E.   Pain and suffering from May of 2022 to the present.

F.   For such other relief that the Court determines just and proper.

Respectfully Submitted By,   /s/ John M. O'Toole
                              Attorney for Plaintiff


John M. O'Toole
Attorney No.:     6199003
Firm:             O'Toole Law Firm, LLC
Address:          150 S. Wacker Drive, Suite 2400, Chicago, IL. 60606
Office Phone:     (312) 546-5057
Cell Phone:       (312)560-8981
FAX:              (312)546-5123
E-Mail:           john@otoolelaw.net